**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY KALUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 2503 |
| v. | ) | |
| | ) | |
| EMTEC, INC., and RICHARD REID, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM, OPINION, AND ORDER**

On March 23, 2015, the Court granted Defendants' motion for summary judgment, denied Plaintiff's motion for partial summary judgment, and dismissed this lawsuit in its entirety. The Court presumes familiarity with its March 23, 2015, Memorandum, Opinion, and Order. Before the Court is Plaintiff's motion to reconsider brought pursuant to Rule 59(e). For the following reasons, the Court, in its discretion, denies Plaintiff's motion.

**LEGAL STANDARD**

Rule 59(e) permits parties to file, within twenty-eight days of the entry of judgment, a motion to alter or amend the judgment. *See* Fed.R.Civ.P. 59(e); *see also Banks v. Chicago Bd. of Educ.,* 750 F.3d 663, 666 (7th Cir. 2014) (twenty-eight day time limit "unyielding" and cannot be extended). A "Rule 59 motion is not a forum to relitigate losing arguments; it may be granted only if the movant can 'demonstrate a manifest error of law or fact or present newly discovered evidence.'" *NLRB v. Latino Exp., Inc.,* 776 F.3d 469, 478 (7th Cir. 2015) (citation omitted). Moreover, Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures" or "introduce new or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954

(7th Cir. 2013) (citations omitted). Under Rule 59(e), the movant must "clearly establish" grounds for relief. *See id.* at 953; *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). District courts have broad discretion in determining Rule 59(e) motions. *See Miller,* 683 F.3d at 813.

"When a motion is filed more than 28 days after the entry of judgment, whether the movant calls it a Rule 59(e) motion or a Rule 60(b) motion, [courts] treat it as a Rule 60(b) motion." *Banks,* 750 F.3d at 666. "Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 690 (7th Cir. 2014) (citation omitted). Rule 60(b) authorizes federal courts to relieve a party from a final judgment for a number of reasons, including mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence; or any other reason justifying relief. *See Anderson v. Catholic Bishop of Chicago,* 759 F.3d 645, 653 (7th Cir. 2014); *Shuffle Tech Int'l, LLC v. Wolff Gaming, Inc.,* 757 F.3d 708, 709 (7th Cir. 2014). A "party invoking Rule 60(b) must claim grounds for relief 'that could not have been used to obtain a reversal by means of a direct appeal,'" therefore, "errors of law and fact generally do not warrant relief under Rule 60(b)(1)." *Banks,* 750 F.3d at 667 (citation omitted). District courts have broad discretion in ruling on Rule 60(b) motions. *See Nash v. Hepp,* 740 F.3d 1075, 1078 (7th Cir. 2014); *Johnson v. General Bd. of Pension & Health Benefits,* 733 F.3d 722, 733 (7th Cir. 2013).

**PROCEDURAL BACKGROUND**

On June 17, 2013, Plaintiff Kelly Kalus filed a four-count First Amended Complaint against her former employer Defendant Emtec, Inc. and Defendant Richard Reid, Kalus' former direct supervisor, alleging gender discrimination and a hostile work environment claim in

2

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Count I), violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Count II), a violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count III), and sex and handicap discrimination claims in violation of the Illinois Human Rights Act ("IHRA"), 765 ILCS 5/1-101, *et seq.* (Count IV).[1]

On October 10, 2014, Defendants filed a summary judgment motion as to all of Plaintiff's claims, after which Plaintiff filed a motion for partial summary judgment as to her FMLA claim. As discussed in the Court's detailed March 23, 2015, Memorandum, Opinion, and Order, Plaintiff's Northern District of Illinois Local Rule 56.1 statements and responses were riddled with legal arguments, speculation, and extraneous information. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [ ] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Moreover, many of Plaintiff's Rule 56.1(b)(3)(A) responses to Defendants' statement of facts failed to cite to any evidence in the record to refute Defendants' statements. *See Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). Furthermore, Plaintiff relied on her declaration to support her facts, although some of the statements in her declaration contradicted her prior deposition testimony. *See Pourghoraishi v.*

---

[1] Because courts analyze claims brought pursuant to the IHRA under the same legal standards for actions brought under Title VII and other federal anti-discrimination statutes, the Court did not address Plaintiff's IHRA claims separately. *See Teruggi v. CIT Group/Capital Fin., Inc.,* 709 F.3d 654, 659 (7th Cir. 2013); *Zaderaka v. Illinois Human Rights Comm'n,* 131 Ill.2d 172, 178, 137 Ill.Dec. 31, 545 N.E.2d 684 (Ill. 1989).

*Flying J, Inc.,* 449 F.3d 751, 759 (7th Cir. 2006) (party cannot "create an issue of material fact by submitting an affidavit that contradicts an earlier deposition.").

In the Court's March 23, 2015, Memorandum, Opinion, and Order, the Court rejected Plaintiff's hostile work environment claim based on her gender because Plaintiff failed to present evidence raising a material fact for trial that her work environment was objectively offensive and that her gender was the cause of any alleged harassment. *See Orton-Bell v. Indiana,* 759 F.3d 768, 773 (7th Cir. 2014). Also, the Court rejected Plaintiff's claim that Defendants constructively discharged her because she did not set forth evidence showing a genuine dispute as to the material fact that her termination was immediate or imminent. *See Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 679-80 (7th Cir. 2010). Finally, the Court concluded that Plaintiff had waived her retaliation claims brought under Title VII and the ADA, and that Plaintiff had failed to raise a genuine issue of material fact that Defendants took a materially adverse action against her as to her FMLA retaliation claim. *See Carter v. Chicago State Univ.,* 778 F.3d 651, 657 (7th Cir. 2015).

**FACTUAL BACKGROUND**

**I.     Emtec's Oracle Practice Groups**

Defendant Emtec, located in New Jersey with offices in Chicago, is an information-technology consulting company that specializes in packaged applications, cloud applications, application development, management consulting, and infrastructure services. In July 2011, Plaintiff began her employment with Emtec's predecessor, Emerging Solutions, as a National Practice Director, Oracle Human Capital Management ("HCM") practice. As the National Practice Director of the Oracle HCM practice, Plaintiff managed the HCM consultants,

4

marketing, staffing, recruiting, and business development. Defendant Richard Reid, the Oracle National Practice Managing Director, offered Plaintiff the job and was Plaintiff's direct supervisor throughout the relevant time period. Shortly after Plaintiff began her employment, Emtec acquired Emerging Solutions in August 2011. After the acquisition, Plaintiff continued in her role as the National Practice Director managing Emtec's Oracle HCM practice.

Plaintiff's peers in the Oracle group, who also reported to Reid, included John Given, the National Practice Director for Oracle Financial, and Todd Siler, the National Practice Director for Oracle Technical. Specifically, Given managed the Oracle financial products, whereas Plaintiff oversaw the Oracle HCM products. As the Technical Lead, Siler supported both Plaintiff and Given by providing technical staff on projects. Plaintiff, Given, and Siler each led a team of consultants in their respective practice areas and supervised one or more practice managers, who in turn supervised a number of front-line consultants.

Approximately eight months after Plaintiff started in her position as National Practice Director of Emtec's Oracle HCM practice, specifically, on February 17, 2012, Reid told the three Oracle National Practice Directors–Plaintiff, Given, and Siler–that Emtec planned to expand its Oracle practice to work with Oracle's new "Fusion" software. At or around that time, Reid decided to incorporate Oracle Fusion into the existing Oracle practice groups led by Plaintiff, Given, and Siler, which increased their job responsibilities. Thereafter, Plaintiff went to Oracle's headquarters in California for training in March and April 2012. At some point in May 2012, however, Reid decided to make structural changes to the Oracle group by separating Fusion from the existing practice groups. In July 2012, Reid hired Steven Bentz as the Oracle Fusion Practice Lead tasking Bentz to "grow" this new practice.

## II. Plaintiff's Medical Leave

On May 9, 2012, Plaintiff notified Emtec that she needed to take time off from work pursuant to the FMLA, as well as through short-term disability. On May 12, 2012, Plaintiff, however, told Emtec's Head of Compensation and Benefits, Anita Dombrowski, that she would be using paid time off to address her condition and that she would not take FMLA leave at that time. In early June 2012, Plaintiff notified Emtec that she was scheduled for surgery on July 23, 2012, and that she would need to take FMLA leave for up to eight weeks after the surgery.

Prior to her scheduled surgery, Plaintiff and Reid met on June 12, 2012, to discuss her pending project lists and address who would cover her projects during her FMLA leave. On June 14, 2012, Plaintiff and Reid exchanged a series of emails regarding whether Plaintiff should step down as the National Practice Director of the Oracle HCM practice. After their email exchange, Plaintiff decided to continue in her role as the National Practice Director of the Oracle HCM practice.

Also on June 14, 2012, Plaintiff notified Reid that she needed to take off work earlier than expected and effective immediately. In response, Dombrowski sent Plaintiff a letter approving the requested leave of absence effective immediately and placed Kalus on an unpaid leave of absence starting on June 14, 2012, ending when her FMLA leave commenced for her scheduled surgery on or about July 23, 2012. Also in June 2012, Plaintiff anticipated that she would return to work sometime in September 2012.

On August 3, 2012, Plaintiff sent Dombrowski an email stating that she would not be able to work part-time as she had hoped, but instead that she would return to Emtec on or about September 17, 2012, as planned. After Dombrowski emailed Plaintiff on September 7, 2012, to

"touch base" about her return to work, Plaintiff notified Dombrowski that she would not be returning to work on September 17, 2012, but that she would get back to Dombrowski before the end of her FMLA leave period about her return date. Instead of returning to work, on September 17, 2012, Plaintiff's counsel–the same attorney who represents Plaintiff in this lawsuit–emailed Emtec a letter stating that Plaintiff would not be returning to work because she was "constructively discharged." The September 17, 2012, letter also demanded a settlement amount of approximately $3 million dollars for Plaintiff's employment-related claims. While she was on FMLA leave, Plaintiff had secured a new job and started her new job one or two days after September 17, 2012. After Plaintiff left her employment at Emtec, Reid offered Kalus' position, namely, National Practice Director of the Oracle HCM Practice, to Jaynie Cosenza, who accepted the offer.

## ANALYSIS

In the reply brief, Plaintiff's counsel admits that he filed Plaintiff's Rule 59(e) motion one day late, but explains that it was by accident. Counsel requests that the Court apply the "excusable neglect" standard to extend the time for filing the present motion despite unequivocal Seventh Circuit case law that holds district courts cannot extend the time limit imposed by Rule 59(e). *See Banks,* 759 F.3d at 666; *Justice v. Town of Cicero, Ill.,* 682 F.3d 662, 664 (7th Cir. 2012); *Blue v. Int'l Bhd. of Elec. Workers Local Union 159,* 676 F.3d 579, 582 (7th Cir. 2012); *Wells v. Ryker,* 591 F.3d 562, 564 (7th Cir. 2010). In forming this conclusion, the Seventh Circuit relies on Federal Rule of Civil Procedure 6(b)(2), which sets forth when a district court cannot extend time clearly delineating that district courts cannot extend time for Rule 59(e) motions. *See Wells,* 591 F.3d at 564 ("an extension of a motion under Fed.R.Civ.P. 59(e) is

7

forbidden by Fed.R.Civ.P. 6(b)(2)."). Although the Court cannot extend the deadline, the Court will consider Plaintiff's Rule 59(e) arguments in the context of Rule 60(b), as Plaintiff suggests in her reply brief. Specifically, in her opening brief, Plaintiff argues that the Court made manifest errors of fact in granting Defendants' summary judgment motion, and in her reply brief, Plaintiff argues that these errors of fact fit under Rule 60(b)(1), namely, that the Court made mistakes in relation to the facts and circumstances of the case. *See Eskridge v. Cook County,* 577 F.3d 806, 809 (7th Cir. 2009).

Plaintiff's theory of the case is that Reid wanted to get rid of her and her theory of liability was that his conduct was based on her gender and her need to take FMLA leave.[2] Although Plaintiff also argued that Defendants discriminated against her based on the ADA, at summary judgment, Plaintiff made no attempt to establish that she is a qualified individual with a disability within the meaning of the ADA. *See Kauffman v. Petersen Health Care VII, LLC,* 769 F.3d 958, 964 (7th Cir. 2014). Because Plaintiff resigned, to fulfill the adverse employment action requirement, she argued that Defendants constructively discharged her. Her other theory of liability was that Defendants' conduct created a hostile work environment based on her gender.

At summary judgment, Plaintiff argued that she told Reid that she needed to take FMLA leave on May 9, 2012, and that Reid was irritated with her because of this request. Thereafter, Plaintiff argues that Reid set out to find her replacement, as evidenced by Emtec's recruiting

---

[2] Plaintiff never presented evidence that Defendants interfered with her rights under the FMLA by depriving her of any FMLA entitlement, such as denying her FMLA request or failing to assist her in taking FMLA-related leave. *See Taylor-Novotny v. Health Alliance Medical Plans, Inc.,* 772 F.3d 478, 498 (7th Cir. 2014); *Ridings v. Riverside Med. Ctr.,* 537 F.3d 755, 761 (7th Cir. 2008).

8

firm posting a job position for an HCM National Practice Director on May 31, 2012. Plaintiff further maintains that the restructuring of the Oracle Group was a "sham plan," and that Defendants created the new position that Bentz filled to avoid the appearance of violating Plaintiff's federally protected right to FMLA leave and Title VII. Plaintiff surmises that Reid did not decide to hire someone for the Oracle Fusion position until June 14, 2012, and that other evidence in the record points to the fact that the Oracle Group reorganization was a sham.

The Court now turns to Plaintiff's factual arguments in her motion to reconsider–keeping in mind that a manifest error of fact "is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000). Plaintiff first asserts that it "appears" that the Court relied on Reid's "self-serving" declaration for the proposition that he decided to make structural changes to the Oracle Group sometime in May 2012. Plaintiff's argument regarding Reid's self-serving declaration is misplaced because most declarations and "affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a [party's] evidence when deciding whether a material dispute requires trial." *Wilson v. McRae's, Inc.,* 413 F.3d 692, 694 (7th Cir. 2005); *see also Widmar v. Sun Chemical Corp.,* 772 F.3d 457, 459-60 (7th Cir. 2014) ("Self-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment"). As discussed in the Court's earlier ruling, the problem with self-serving affidavits occurs when a party tries to "create an issue of material fact by submitting an affidavit that contradicts an earlier deposition," *see Pourghoraishi,* 449 F.3d at 759, as Plaintiff attempted at summary judgment.

Next, Plaintiff takes issue with the factual premise that Reid decided to make the structural changes to the Oracle Group sometime in May 2012. The facts in the record show that

9

Emtec– through its recruiting firm–began recruiting for the new Oracle Fusion position, as opposed to Plaintiff's position which encompassed Oracle's PeopleSoft software, on May 31, 2012. (*See* R. 82, Pl.'s Stmt. Facts ¶ W.2.) This fact leads to the reasonable inference that Reid had made the decision to make Oracle structural changes before the hiring process began at the end of May 2012. (*See* R. 82, Pl.'s Stmt. Facts ¶ W.2.) Plaintiff's arguments that there was no official, separate Fusion practice until October 2012, that Bentz's time and expenses were charged to the regular HCM practice until September 2012, and that an accounting officer did not know where to "put" Bentz from a financial reporting system in August 2012, do not belie the fact that Reid made the decision to make a structural change to the Oracle Group in May 2012. (*Id.* ¶¶ Y.1, Y.2, Y.3.) That being said, Plaintiff's argument that the Court made a crucial mistake by stating that Reid decided to restructure the Oracle Group in May 2012 because Reid decided to "get rid of Plaintiff before he made the 'structure change'" does not change the Court's conclusion. To clarify, even assuming that Reid made the restructuring decision on June 14, 2012, as Plaintiff suggests, Plaintiff failed to present evidence establishing a material issue of fact that Reid's attempt to "get rid of her" was based on her request to take FMLA leave or her gender. *See, e.g., Dass v. Chicago Bd. of Educ.,* 675 F.3d 1060, 1072 (7th Cir. 2012); *see also Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011) ("Without some semblance of a link between her gender and the adverse employment actions she experienced, [plaintiff's] discrimination claim is destined to fail.").

Plaintiff also asserts that the Court did not mention all of the facts she presented in her summary judgment filings. At summary judgment, however, the facts at issue must be material and not based on speculation. *See Widmar,* 772 F.3d at 460. Also, as discussed, Plaintiff's Rule

56.1 Statements of Fact were woefully inadequate, and in ruling on summary judgment, the Court literally scoured the record, instead of granting Defendants' request to strike Plaintiff's Rule 56.1 Statements of Fact, even though it is not the district court's responsibility to piece together a party's evidence. *See Diadenko v. Folino,* 741 F.3d 751, 757 (7th Cir. 2013). Nonetheless, the Court did not consider Plaintiff's unsupported facts or facts that Defendants' properly refuted in their Rule 56.1 responses.

Turning to the facts Plaintiff highlights as missing, Plaintiff points to the fact that Reid told Emtec's Vice President of Human Capital, Deborah Branden, that Bentz had Oracle Fusion experience when in fact he did not. Plaintiff maintains that this misstatement supports her theory that Reid's reorganization of the Oracle Group was a sham. At summary judgment, Defendants properly disputed this fact in their Rule 56.1 Response. When construing the facts in favor of the non-movant at summary judgment, courts cannot ignore Federal Rule of Civil Procedure 56(e) and use unsupported facts in the non-movant's favor. *See Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012). In addition, construing the facts and making reasonable inferences in favor of a non-movant does not require the Court to accept that party's "conclusion on what a piece of evidence indicates." *See Fleishman v. Continental Cas. Co.,* 698 F.3d 598, 603 n.1 (7th Cir. 2012). In other words, courts do not adopt a party's conclusion on what constitutes a reasonable inference, but instead, independently review the evidence in making any reasonable inferences. *See id.*; *see also Miller v. Gonzalez,* 761 F.3d 822, 827 (7th Cir. 2014) (a party's "speculation, hunches and intuition cannot defeat summary judgment").

In addition, Plaintiff contends that the Court erred by not mentioning that at her June 12, 2012, meeting with Reid, he discussed the possibility of bringing in a female consultant from

11

Northern California to assist her in getting Oracle Fusion up and running during Plaintiff's leave. At his deposition, Reid testified that he had talked to this consultant, but that nothing materialized. Plaintiff counters with this consultant's affidavit stating that Reid did not approach the consultant about helping out, although she had met with him on a previous occasion. As such, Plaintiff argues that Reid's deposition testimony was false, (*see* Pl.'s Stmt. Facts ¶ P.1.), and that this false statement supports her argument that Reid's restructuring of the Oracle Group was merely a sham to cover-up Reid's violation of the FMLA and Title VII. Plaintiff's argument asks the Court to make speculative, inferential leaps to conclude that the Oracle Group reorganization was an entire sham, especially in light of the fact that Plaintiff failed to present a convincing mosaic of evidence from which a reasonable jury could find that Defendants discriminated against her based on her gender or FMLA request. As such, this argument is without merit.

As to her constructive discharge arguments, Plaintiff points to other evidence that the Court did not discuss in the summary judgment order, such as emails, notes, and communications that occurred prior to her September 17, 2012, resignation, of which she was not aware until the parties conducted discovery in this lawsuit. Because Plaintiff was unaware of these communications before she resigned, they do not shed any light on whether Emtec acted "in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin,* 621 F.3d at 679 (citation omitted). Put differently, these communications do not establish or support that Emtec's conduct communicated to Plaintiff that Emtec would imminently terminate her because the emails were not communicated to her before her

September 2012 resignation. *See Jones v. National Council of YMCA,* 48 F.Supp.3d 1054, 1117-18 (N.D. Ill. 2014).

That being said, the Court turns to Plaintiff's arguments about a June 11, 2012, email from Plaintiff's co-worker Siler to Reid, in which Siler states in relevant part:

> There is no reason to move forward with a resource if a decision has been made to change course. If we are starting the interview process we should not put Kelly out front any longer as the face of our HCM practice. I know you really, really, really want to have a replacement identified prior but there are a number of initiatives that we should just not proceed with her in the lead.... [N]ext Friday, June 22, we should move forward without Kelly as our HCM practice lead.

(Pl.'s Stmt. Facts ¶ O.) Reid responded the next day by stating "Let's discuss in person." (*Id.*) Without giving any further context, Plaintiff characterizes this email as a conversation between Reid and Siler discussing Plaintiff's demotion, discharge, or inducing Plaintiff to quit. Assuming that Plaintiff's argument is based on a reasonable inference, Plaintiff was unaware of this email until after she resigned from her employment, therefore, it does not support her constructive discharge claim.

In the context of Plaintiff's overall theory of the case, although this email may speak to Reid wanting to get rid of her, Plaintiff never connected Reid's desire to demote or fire her with her request for FMLA leave or her gender. *See Beamon v. Marshall & Ilsley Trust Co.,* 411 F.3d 854, 863 (7th Cir. 2005) ("not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs" to a protected class); *see also Bennington v. Caterpillar Inc.,* 275 F.3d 654, 660 (7th Cir. 2001) (plaintiff must connect conditions of employment to defendant's unlawful bias). Plaintiff argues that Reid was irritated that she was taking FMLA leave, but the record is devoid of any such evidence. In an attempt to show Reid based the allegedly unlawful employment decisions on Plaintiff's FMLA

leave request, Plaintiff argues that Reid "has a habit and pattern of not dealing well with subordinates who become ill." Plaintiff bases this argument on an unsupported allegation that Reid refused to authorize paid time off for a Emtec employee on maternity leave. Plaintiff also points to the fact that Emtec eventually terminated Bentz's employment and that Reid knew Bentz had a heart condition. It should go without saying that Plaintiff cannot establish a material fact for trial by misstating the evidentiary record. *Cf. Wiesmueller v. Kosobucki*, 547 F.3d 740, 741 (7th Cir. 2008). Moreover, counsel's arguments are simply not evidence. *See United States v. Thomas*, 763 F.3d 689, 694 (7th Cir. 2014).

The remainder of Plaintiff's arguments in her opening brief rehash arguments that she made–and the Court rejected–at summary judgment, including Plaintiff's arguments based on a conversation that Reid and Dombrowski had on September 7, 2012, in anticipation of Kalus returning to work from her FMLA leave, in which they discussed how to welcome Kalus back to work. *See Vesely v. Armslist LLC,* 762 F.3d 661, 666 (7th Cir. 2014) ("Rule 59(e) motion is not to be used to 'rehash' previously rejected arguments"). Another rehashed argument concerns a telephone conversation that Dobrowski and Branden had with an employment lawyer on June 14, 2012, that the Court discussed in detail in the summary judgment ruling. Last, Plaintiff makes a handful of additional factual arguments for the first time in her reply brief, which are waived. *See Darif v. Holder,* 739 F.3d 329, 337 (7th Cir. 2014).

"Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Kathrein,* 752 F.3d at 690 (citation omitted). Plaintiff has not shown that any such exceptional circumstances exist nor has she "clearly established" that the Court made a manifest error of fact under the lower Rule 59(e) standard. *See Cincinnati Life,* 722 F.3d at 953.

14

Accordingly, the Court, in its discretion, denies Plaintiff's motion to reconsider. *See Machinery & Fabrication, Inc. v. Traditional Baking, Inc.,* 570 F.3d 845, 848 (7th Cir. 2009) ("The district court has great latitude in making a Rule 60(b) decision because that decision is discretion piled on discretion.") (internal quotation marks omitted); *see also Cash v. Illinois Div. of Mental Health,* 209 F.3d 695, 698 (7th Cir. 2000) (plaintiff's arguments "that the court wrongly excluded evidence, misinterpreted the evidence that was presented, and did not understand his theory of the case–cannot be shoe-horned into grounds for Rule 60(b) relief.").

## CONCLUSION

For these reasons, the Court, in its discretion, denies Plaintiff's motion to reconsider.

**Dated:** May 18, 2015

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**